**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ADVANCE RCM CONSULTING SERVICE, LLC<br><br>Petitioner,<br><br>v.<br><br>UROLOGY CLINIC, P.C.<br><br>Respondent. | Civil Action No. ________________ |

**PETITION TO COMPEL ARBITRATION**
**<u>PURSUANT TO 9 U.S.C. § 4</u>**

Petitioner, Advance RCM Consulting Service, LLC, by and through its undersigned counsel, petitions this Court for an order compelling Respondent Urology Clinic, P.C., to arbitrate in accordance with the parties' written arbitration agreement. In support thereof, Petitioner alleges as follows:

**The Parties**

1. Petitioner Advance RCM Consulting Service, LLC (hereinafter "Petitioner"), is a limited liability company organized in Pennsylvania with its principal place of business located at 604 Unruh Avenue, Philadelphia, PA 19111.

2. Respondent Urology Clinic, P.C. (hereinafter "Respondent"), is a professional corporation organized in Colorado with its principal place of business at 501 Anglers Dr, Ste 202, Steamboat Springs, CO 80487.

**Jurisdiction & Venue**

3. Pursuant to the Federal Arbitration Act (9 U.S.C. § 1, *et seq.*), this Court has subject-matter jurisdiction because, absent the parties' arbitration agreement, the underlying controversy between the parties would be within this Court's jurisdiction under 28 U.S.C. § 1332.

4. Specifically, subject matter jurisdiction exists because there is complete diversity of the parties and the amount in controversy is in excess of $75,000.

5. Venue is proper in this District pursuant to 9 U.S.C. § 4 because the arbitration agreement requires arbitration to occur in Philadelphia, Pennsylvania, a locality within the Eastern District of Pennsylvania.

**The Written Arbitration Agreement**

6. On or about November 1, 2025, Petitioner and Respondent entered into the Master Services Agreement (the "MSA" or "Agreement"). A true and correct copy of the Master Services Agreement is attached hereto as Exhibit A.

7. The MSA controls all medical billing services that Respondent engaged Petitioner to provide, which Respondent separately detailed and defined for Petitioner. The separate agreed definition of the specific services that Respondent engaged Petitioner to perform is referred to as a "Statement of Work" or "SOW" under the MSA. *See* Ex. A, Sections 1.1 and 1.2, pg. 1.

8. The MSA does not expressly identify what a SOW must look like; instead, it allows the parties to separately agree to the minutiae of the specific services performed by Petitioner, with the MSA terms taking precedence wherever any conflict between the MSA and SOW arises or omission occurs:

> **1.1** <u>Scope of Services</u>. As mutually agreed by the Parties pursuant to a statement of work (each, a "**SOW**") under this Agreement, Advance RCM Consulting Service may provide to Customer Professional Services, Managed Services, and/or Software Services (as each term is defined below and, collectively, the "**Services**"). Services provider under a particular SOW may be referred to as a "**Project**."
>
> …
>
> **1.2** <u>SOWs</u>. This Agreement governs each SOW, and in the event of any conflict between the terms of this Agreement and a SOW, such conflict will be resolved in accordance with Section 10.14.
>
> …

> **10.14** Order of Precedence. If there is any conflict between this Agreement and any terms contained in any other agreement reference in this Agreement, then: … (b) as between the terms of this Agreement and the terms of any SOW, the terms of this Agreement will control[.]

Ex. A, Section 1.1 and 1.2, pg. 1; Section 10.14, pg. 9.

9. The parties did, in fact, separately agree to the specific medical billing services that Petitioner would provide to Respondent, including services such as, *inter alia*, payment posting, coding, and billing approval; handling patient calls through and with the AdvanceMD web portal; claims handling, submission, and billing adjustment, and; patient account reconciliation.

10. Accordingly, when a dispute arises concerning the medical billing services that Respondent agreed to engage Petitioner to provide, the MSA's dispute resolution terms compel the parties to arbitrate the dispute.

11. The arbitration provision under the MSA states, in relevant part:

> **10.6** Dispute Resolution. In the event of any dispute, controversy, claim or disagreement arising out of or related to the SOW or the acts or omissions of any Party with respect to the SOW (each, a "**Dispute**"), Customer [Respondent] and Advance RCM Consulting Service shall … submit such Dispute to binding arbitration conducted in Philadelphia, Pennsylvania by a mutually agreeable single arbitrator from the American Arbitration Association ("**AAA**") in accordance with the commercial arbitration rules of AAA. … This Section will survive the expiration or termination of the SOW or MSA.

Ex. A, Section 10.6, pg. 8.

12. The arbitration provision is valid, binding, and enforceable according to its terms.

13. The dispute between the parties falls within the scope of the arbitration provision because Respondent wrongfully terminated the MSA by asserting that Petitioner had failed to provide contracted medical billing services as agreed, pursuant and subject to the MSA.

**The Parties' Dispute**

14. A dispute has arisen between Petitioner and Respondent concerning the improper termination of the MSA due to an alleged lack of performance of medical billing services provided

by Petitioner to Respondent from November 2025 through March 2026. A true and correct copy of Respondent's Termination Letter is attached hereto as Exhibit B.

15. More specifically, on or about April 3, 2026, counsel for Respondent sent the Termination Letter to Petitioner, alleging that Petitioner failed to perform agreed-to medical billing services as follows:

> On November 1, 2025, The Urology Clinic entered a contract for medical billing services with ARCM. On March 19, 2026, they informed you they were seeking to terminate the contract effective April 18, 2026. Their reason for terminating the contract was based on cause and material breaches of the contract. More specifically, ARCM failed to provide any services for the months of November and December, as well as not billing out any charges past March 9th, 2026. The Urology Clinic also informed ARCM to cease all activity on behalf of the clinic to avoid further damage caused by the ongoing breach.

Ex. B, pg. 1.

16. Petitioner contends that the claims and issues in dispute are subject to mandatory arbitration under the MSA.

17. Respondent has asserted, threatened, or maintained claims concerning the arbitrability of the dispute and refused to submit the dispute to arbitration.

**Respondent's Refusal to Arbitrate**

18. On or about July 13, 2026, Petitioner notified Respondent that Petitioner intended to proceed to arbitration pursuant to the MSA regarding the improper termination of Petitioner's contract and withholding of payment for performance of agreed to work. Subsequently, on July 17, 2026, Petitioner demanded arbitration per the terms of the MSA and rules of AAA, filing a Demand for Arbitration through AAA's e-filing portal, *Advance RCM Consulting Service, LLC v. Urology Clinic, P.C.*, AAA Case No. 01-26-0004-4265.

19. Petitioner sent the Demand for Arbitration via email to Respondent's legal counsel, Benjamin R. LaBranche, Esq., with whom Petitioner's legal counsel had engaged in extensive

discussion regarding the disputed termination and performance of work after Petitioner received the Termination Letter in early April 2026. A true and correct copy of Petitioner's Arbitration Correspondence is attached hereto as Exhibit C.

20. Respondent has refused to arbitrate by expressly refusing arbitration and, on the same day that Petitioner filed the Demand for Arbitration with AAA and sent notice, Respondent filed, on July 17, 2026, an action in the District Court of Routt County, State of Colorado – *Urology Clinic, P.C. v. Advance RCM Consulting Service, LLC*, Case Number 2026CV30052 – seeking declaratory judgment that the dispute is not arbitrable under the terms of the MSA.

21. Moreover, Respondent has insisted that it will seek a stay of the arbitration proceedings while the Colorado District Court considers the declaratory judgment action.

22. Respondent remains in default of its obligation to arbitrate under the written arbitration agreement contained in the MSA.

23. Petitioner is ready, willing, and able to proceed with arbitration in accordance with the express terms of the MSA.

**Basis for Relief**

24. Under 9 U.S.C. § 4, a party aggrieved by another party's failure, neglect, or refusal to arbitrate under a written arbitration agreement may petition a United States district court for an order directing that arbitration proceed in the manner provided for in the agreement.

25. "Congress's purpose in the FAA [is] 'to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.'" *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) (*quoting Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U. S. 1, 22 (1983)).

26. Accordingly, a court must compel arbitration "unless it may be said with positive

assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986) (*quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-583 (1960)).

27. The MSA is a written agreement containing a valid agreement to arbitrate.

28. The making of the MSA and the arbitration provision is not in issue, or, to the extent Respondent attempts to place it in issue, Petitioner requests that the Court resolve that issue summarily as provided by law.

29. Respondent's refusal to arbitrate is not in issue, or, to the extent Respondent attempts to place it in issue, Petitioner requests that the Court resolve that issue summarily as provided by law.

30. Petitioner will serve Respondent with written notice of this Petition in the manner provided by the Federal Rules of Civil Procedure and consistent with the notice required for an application under 9 U.S.C. § 4.

31. An order compelling arbitration is necessary to enforce the parties' written arbitration agreement.

32. To the extent any claims between the parties are pending in this action or any related action, those claims should be stayed pending completion of arbitration or dismissed if no further issues remain for this Court to resolve.

**Prayer for Relief**

Petitioner respectfully requests that the Court enter an order:

1. Compelling Respondent to proceed to arbitration with Petitioner in accordance with the written arbitration agreement in Section 10.6 of the MSA;

2. Directing that the arbitration proceed in the manner provided by the MSA, including before an arbitrator of the American Arbitration Association in Philadelphia, Pennsylvania;
3. Staying any claims, proceedings, or deadlines in this action that are referable to arbitration pending completion of arbitration, or dismissing such claims as appropriate;
4. Awarding Petitioner its costs and any other relief available under the MSA or applicable law; and
5. Granting such other and further relief as the Court deems just and proper.

CHARLSON BRABER McCABE & DENMARK, PC.

Date: August 26, 2026

*/s/ Lance M. Sacknoff*

Noah H. Charlson, Esquire
Pa. ID #: 89210
Lance M. Sacknoff, Esquire
Pa. ID #: 331850

1628 JFK Blvd, Suite 1803
Philadelphia, PA 19103
(267) 704-7301

*Attorneys for Petitioner*